## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL ACTION NO. V-08-01** |
| | § | |
| **TURNER CORNELL MOONEYHAM** | § | |
| | § | |

### MEMORANDUM OPINION & ORDER

Pending before the Court are Defendant, Turner Cornell Mooneyham's Motion to Dismiss (Dkt. #42) and Motion to Suppress (Dkt. #43).[1]  The Court held an evidentiary hearing on Defendant's motions on August 11, 2008.  After considering the briefing, testimony and applicable law, the Court is of the opinion that both motions should be DENIED.

### Factual Background

Defendant asserts that the indictment pending against him should be dismissed because the Government did not indict him within the time period provided by the Speedy Trial Act.  18 U.S.C. § 3161(b).  The following relevant events led up to the indictment in this case:

On March 21, 2007, Defendant was indicted in the Western District of Texas, San Antonio Division for transportation of illegal aliens and was released on $25,000 bond.  Subsequently, on June 7, Victoria County Sheriff's Deputy Joe Garcia went to the Defendant's residence trying to locate Christina Rodenkirch, who was the subject of a state felony arrest warrant. When he arrived, the Defendant opened the door and told the officer that Rodenkirch was not there.  He declined the officer's request to search the premises, at which time, the officer advised him of the consequences

---

[1]  Dkt. #45 is an amended version of Defendant's Motion to Suppress asserting the same grounds for relief.

of harboring a fugitive.[2]

On June 28, 2007, Special Agent David Taylor obtained a search warrant signed by Magistrate Judge Brian Owsley to search the Defendant's residence in Victoria, Texas for evidence relating to federal firearms violations. Agent Taylor and Victoria Sheriff's Deputy Garcia, along with other law enforcement officers, executed the warrant the next day. During the search, Deputy Garcia learned that Christina Rodenkirch was found inside the residence with the Defendant. In light of the officer's previous warning about harboring a fugitive, the Defendant was arrested for hindering apprehension, a state law violation. State law enforcement officials took him into custody.

Agent Taylor, who was aware of the pending charges against the Defendant in the Western District, contacted the Assistant United States Attorney ("AUSA") in the Western District to notify him about the Defendant's arrest in Victoria. The AUSA asked if Agent Taylor would contact the Victoria County District Attorney's Office to seek a high bond in order to give the Western District AUSA time to seek revocation of the Defendant's bond in its alien smuggling case. Pursuant to the Western District AUSA's request, Agent Taylor contacted Michael Ratcliff of the Victoria County District Attorney's Office. Defendant's bond for the state charge of hindering apprehension was thereafter set at $250,000 by the Justice of the Peace.[3] On July 2, the Western District issued an arrest warrant for the Defendant to show cause why his bond should not be revoked and placed a federal detainer on him.

On August 10, 2007, the Defendant was indicted by the State for hindering apprehension.[4]

---

[2] Dkt. #54, ex. 1.

[3] Dkt. #42-2.

[4] *Id.* 42-3.

The alien smuggling charges pending against the Defendant in the Western District were dismissed on September 6, 2007; however, the federal detainer was not removed.  On November 30, a hearing was held before the State District Court on the hindering apprehension charge.  The state prosecutor told the court that "there are, currently, unindicted charges in the Federal jurisdiction which are pending."  He requested that the jury trial be reset to February 6, 2008, as the disposition of the federal charges would affect the state case.  He anticipated "that th[e state] case w[ould] be disposed of by that point."  When asked by the court why the federal case affects the state charge, the prosecutor responded that if the pending charges in the federal case are pursued, he did not anticipate a need for trial in the state case.  The court stated: "We're not going to continue to wait on the Federal government to make a decision, one way or another."  The prosecutor responded: "I'll call them today, Your Honor, and have them act."[5]

Agent Taylor testified that the state prosecutor contacted him to let him know that the State was not prepared to move forward on the state charges, and any further delay would likely result in the Defendant being released on a personal recognizance bond.  That day, Agent Taylor received permission from the AUSA of the Southern District to file a federal criminal complaint alleging a charge of giving a false statement on a firearms form.  An arrest warrant was also issued that day; however, a federal detainer was not placed on the Defendant by the Southern District.[6]

On December 20, 2007, the state case was dismissed, noting "Defendant to face federal charges . . . ."[7] The Defendant was arrested on the same day for the federal firearms charge.  Agent

---

[5] *Id.* 42-4.

[6] Agent Taylor testified he found it unwarranted to place a federal detainer on the Defendant as it created burdensome paperwork and judicial process.

[7] Dkt. #42-5.

Taylor testified that the state prosecutor notified him that the Defendant would be released on that date.  A federal indictment was returned against the Defendant on January 17, 2008.

**Discussion**

**I.      Speedy Trial Act**

The Government contends the indictment was returned within the required 30 days of the Defendant's arrest for federal charges; while the Defendant argues that the Speedy Trial Act time limitations began to run when he was arrested in June.  He maintains the state arrest was merely a ruse to allow the federal authorities time to investigate and charge him with a federal crime.  Alternatively, he contends the clock for the Speedy Trial Act was triggered on November 30, when a federal complaint was filed against him and an arrest warrant thereby issued.

The Speedy Trial Act ("STA") requires federal authorities to indict an individual within a certain time period after his arrest. Of particular relevance to this case, § 3161(b) provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).  Failure to comply with the time limits set out in the STA results in dismissal of the charges. *See* 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.").        An individual is "arrested" under the STA when he is "taken into custody after a federal arrest for the purpose of responding to a federal charge." *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987).  The Defendant argues that he was

4

arrested for purposes of the STA in June 2007 when the state authorities took him into custody. However, "[a]n arrest made by a state officer, even if state and federal officers are cooperating at the time, does not start the running of the thirty day time period." *United States v. Taylor*, 814 F.2d 172, 175 (5th Cir. 1987).  Thus, although the Defendant was arrested during the execution of a federal search warrant and the federal authorities were present during the arrest, he was not "arrested" within the meaning of the STA because he was taken into custody by state law enforcement officials on valid state law charges.

The "ruse exception" to the STA was first established by the Ninth Circuit, and has since been adopted by the Fifth Circuit.  Specifically, the ruse exception allows for the time limitations of the STA to be triggered by a state detention if it is merely a ruse to detain the defendant solely for the purpose of bypassing the thirty day time limit. *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994); *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000).  As the Ninth Circuit explained:

> The Speedy Trial Act would lose all force if federal criminal authorities could arrange with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges. For this reason, Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act.

*Benitez* 1494.  The ruse exception to the STA, however, only applies where the defendant demonstrates that the "primary or exclusive purpose" of the detention was to hold him for future federal prosecution. *De La Pena-Juarez*, 214 F.3d at 598 (applying the ruse exception to civil immigration detentions).

The Defendant here cites several facts that he claims demonstrate collusion between federal and state law enforcement officials.  First, he relies on the fact that he was arrested during the

execution of a federal search warrant and the fact that federal and state officials acted together in executing the warrant.  It is well established, however, that cooperation between state and federal officials is not prohibited and does not evidence collusion. *United States v. Ramirez*, 55 F.3d 633 (5th Cir. 1995) (per curiam) (citing *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987)). Agent Taylor testified that the federal agents enlisted the assistance of the local sheriff's department in the execution of the search warrant because the Bureau of Alcohol, Tobacco and Firearms had limited manpower and they believed that numerous firearms may be found at the Defendant's residence.  Further, Deputy Garcia established that the Defendant was arrested on the state charge of hindering apprehension and was taken into custody by state officials.  The State subsequently indicted him on this charge, and the federal officials were never actively involved in the State prosecution.  Thus, the arrest of the Defendant in June 2007 does not constitute a federal arrest for purposes of the STA, and the cooperation between the state and federal law enforcement officials does not establish collusion or a ruse merely to hold the Defendant for future federal prosecution with the purpose of bypassing the STA time limitation.

The Defendant also relies upon the Western District's request for a high bond to establish a ruse between state and federal officials.  Specifically, the AUSA in the Western District asked Agent Taylor to inquire about getting a high bond set such that he would have time to get the Defendant's bond revoked and have an arrest warrant and federal detainer issued for the case pending against the Defendant in the Western District.  Agent Taylor communicated this request to the Victoria County District Attorney's Office, which in turn, sought a higher than usual bond in Defendant's state case.

Although this request may be ununsual, it does not demonstrate a ruse between the federal

and state officials to avoid the time limitations of the STA.  The Western District had a legitimate interest in ensuring that the Defendant was not released from jail because it appeared that he had violated the conditions of his bond.  Additionally, the Western District was unconcerned with the STA limitations at the time it requested a higher bond because the Defendant was already under indictment in that District.  The Western District, therefore, had a valid reason to request a higher bond in the state case, and their actions were in no way an attempt to evade the requirements of the STA.

Moreover, the thirty day time limit applies only to the information or indictment to be filed "in connection" with the offense for which the defendant was arrested. 18 U.S.C. § 3161(b); *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 (5th Cir. 2000); *United States v. Cepeda-Luna*, 989 F.2d 353, 355 (9th Cir. 1993). Thus, even assuming *arguendo* that the Western District was improperly involved in the state case by requesting a higher bond, the Defendant is not seeking a dismissal of the Western District indictment.  The charge for which the Defendant was arrested in this case is not connected to the indictment issued in the Western District, making the STA ruse exception inapplicable to the Western District's involvement in the state case. *See id.* at 357 ("The mandatory dismissal provisions of the STA in 18 U.S.C. § 3162(a)(1) also require a nexus between the arrest and subsequent criminal charges."); *De La Pena-Juarez*, 214 F.3d at 597. In other words, any cooperation between state and federal authorities regarding the Defendant's bond were unrelated to the present indictment which the Defendant seeks to dismiss.

Alternatively, Defendant contends that, although he continued to be in state custody, the STA time limitation was implicated on November 30 when a federal complaint was filed and a federal warrant issued for his arrest.  As previously noted, only a federal arrest will trigger the STA

provisions. *United States v. Taylor*, 814 F.2d 172, 175 (5th Cir. 1987).  The filing of a federal complaint does not constitute a federal arrest. The Fifth Circuit has explained that:

> [t]he Speedy Trial Act does not begin to run when the defendant is arrested by state authorities on state charges, nor does it begin when a federal detainer is lodged with state authorities. Instead, only a federal arrest triggers the start of the time limits set in the Act. Filing a complaint and detainer are not equivalent to a federal arrest. Thus, for the time limit of the Act to commence a person must be held for the purpose of answering to a federal charge.

*Id.* (citing *United States v. Shahryar*, 719 F.2d 1522, 1524–25 (11th Cir. 1983)). In *Shahryar*, a federal complaint was lodged against the defendant while he was in state custody, and the federal arrest took place immediately upon his release. *Id.* at 1524. The court rejected the argument that the filing of the complaint was an "arrest," finding that a person must be "held for the purpose of answering to a federal charge" in order to trigger the protections of the STA. *Id.* at 1524-25; *see also Taylor*, 814 F.2d at 175 (addressing similar circumstances).  The Defendant in the instant case was in lawful custody of the state authorities on the date the federal complaint was filed, and therefore, the STA time limitations were not implicated until he was formally arrested on the federal charges on December 20, 2007.

The Defendant also accumulates certain events surrounding the date the federal complaint was filed to show that the state detention was a ruse to avoid the STA time limitations.  He relies on the statements made by the state prosecutor to the State District Judge at a pretrial hearing, the language used in the order of dismissal in the state case, and the fact that the federal authorities were present to arrest him on the date he was released from state custody.  Although these facts certainly demonstrate that the federal and state authorities cooperated during the time that the Defendant was in state custody; they do not demonstrate collusion. The Supreme Court has previously stated that "such routine cooperation between local and federal authorities is, by itself, wholly unobjectionable:

'Only by such an interchange of information can society be adequately protected against crime.'" *United States v. Alvarez-Sanchez*, 511 U.S. 350, 360 (1994) (citing *United States v. Coppola*, 281 F.2d 340, 344 (2d Cir. 1960) (en banc), aff'd, 365 U.S. 762 (1961)). The defendant has the burden of providing adequate proof to support his motion to dismiss, *United States v. Johnson*, 29 F.3d 940, 945 (5th Cir. 1994), and the Defendant's argument that the State continued to hold him after the federal complaint was filed for the purpose of evading the STA time limitations is speculative at best. *See United States v. Michaud*, 268 F.3d 728, 735 (9th Cir. 2001) ("A finding of collusion requires proof of a deliberate intent to deprive a defendant of her federal procedural rights."). There is no evidence that the federal authorities spoke to any state official about continuing to hold the Defendant or took any affirmative steps to keep him in state custody until a federal indictment could be obtained.  It is just as likely that the three week delay in dismissing the state case stemmed from a backlog.  Moreover, the state prosecutor never stated that he was not prepared to move forward should the federal government not act; he only stated that he would not move forward if the federal authorities decided to indict the Defendant on federal charges.  While an inference can be made that the federal authorities were contacted regarding the Defendant's release date from state custody, the fact that the federal authorities arranged to arrest the Defendant after being released from state custody does not render the federal arrest a ruse. *United States v. Ramirez*, 55 F.3d 633 (5th Cir. 1995) (per curiam). The Defendant only presents the Court with specualtion and conjecture; however, he has not provided any evidence that the State continued to hold him for the "primary or exclusive" purpose of allowing the federal authorities time to indict him. *De La Pena-Juarez*, 214

F.3d at 598.  Accordingly, the Defendant's STA argument fails.[8]

## II.    Defective Search Warrant

The Defendant has also filed a motion to suppress arguing the search warrant issued by Magistrate Judge Owsley on June 28, 2007 was defective because it commanded the officer to "search on or before July 6, 2006" which back-dated any possible return date.  The Defendant asserts it gave the agent too much flexibility in when the search warrant could be executed.  Therefore, the search warrant should be deemed invalid and all of the items seized pursuant to it suppressed.

The Government responds that all typewritten dates on the search warrant were dated June 28, 2007; however, the handwritten return date written by Magistrate Owsley was incorrectly written as July 6, 2006.  Based on the context of the application and the search warrant, and the numerous typed dates and file stamp clearly showing June 28, 2007, it is obvious that the true date of return was supposed to be on or before July 6, 2007.  While the mistake was clearly inadvertent, the actual return was made by Special Agent David Taylor on July 3, 2007, well within the 10 days allowed by the search warrant.

The Court agrees with the Government.  The Defendant's argument appears disingenuous as the federal agent applied for the warrant, appeared before the Magistrate, obtained the warrant and immediately proceeded to the property to execute the warrant within 24 hours of its issuance.  The warrant is clearly dated June 28, 2007 by all the type-written notations and the file stamp, and the return was timely filed within what clearly should have been July 6, 2007.  Considering these

---

[8] The Defendant makes a related argument that, due to the STA violation, all of the evidence discovered after the thirty day time limitation expired should be suppressed.  However, it is unnecessary for the Court to address this argument because the Court has already determined that no STA violation occurred.

facts, it is reasonable for the Court to find, and for the executing officers to believe, that the incorrect return date was merely an insignificant scrivener's error. *See United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) (incorrect date); *United States v. Turner*, 558 F.2d 46, 52-53 (2d Cir. 1977) (issuing magistrate forgot to sign the warrant); *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971) (same).

Even if the Court were to find that the Magistrate's error was significant and amounted to an error of constitutional dimensions, it would not justify suppression of the evidence. The Fifth Circuit has addressed a similar situation in which a warrant and affidavit included an incorrect date. *United States v. Galbert*, 248 F.3d 1144 (5th Cir. 2001) (per curiam). It found that the officer relied in good faith on the warrant, although it was technically issued in violation of the law, and therefore, the exclusionary rule should not apply. *Id.* Specifically, because the warrant and affidavit contained sufficient information regarding the object of the search, the warrant could easily be validated by a minor correction, and the incorrect dates had no effect on the probable cause finding, the officers executed the warrant in objectively reasonable good faith, and it was not an error to deny the defendant's motion to suppress on that ground. *Id.* The Defendant here does not challenge the specificity of the information supplied or the probable cause finding. Thus, solely relying on scrivener's error, the Defendant cannot demonstrate a defect of constitutional proportions with the search warrant, and the warrant should not be invalidated on the basis of an incorrect return date.

### Conclusion

Accordingly, the Court finds that the Defendant was held on the valid state charge of hindering apprehension until December 20, 2007, at which time he was arrested on the federal firearms charge. Because he was indicted on January 17, 2008, the time limitation mandated by the

Speedy Trial Act was not violated.  Further, the Court finds no grounds to warrant suppression of the evidence in this case.  Therefore, Defendant, Turner Cornell Mooneyham's Motion to Dismiss (Dkt. #42) and Motion to Suppress (Dkt. #43) are DENIED.

It is so ORDERED.

SIGNED this 17th day of September, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE